1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**
9 **SOUTHERN DISTRICT OF CALIFORNIA**
10
11 ARLEEN Y. QUIAMBAO,                      Case No. 17-cv-02305-BAS-RBB

12                        Plaintiff,         **ORDER:**

13        v.                                 **(1) GRANTING PLAINTIFF'S
                                             MOTION FOR SUMMARY
14                                           JUDGMENT (ECF No. 12);**

15 NANCY A. BERRYHILL, Acting               **(2) DENYING THE
   Commissioner of Social Security,         COMMISSIONER'S CROSS-
16                                           MOTION FOR SUMMARY
                        Defendant.           JUDGMENT (ECF No. 13);
17                                           AND**

18                                           **(3) REMANDING ACTION FOR
                                             FURTHER PROCEEDINGS**
19
20
21        Plaintiff Arleen Quiambao seeks judicial review of a final decision by the

22 Acting Commissioner of Social Security ("Commissioner") denying his application

23 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.

24 §§ 401-434.  The Court has jurisdiction to review the Commissioner's final decision

25 pursuant to 42 U.S.C. § 405(g).

26        Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 12)

27 and the Commissioner's Cross-Motion for Summary Judgment (ECF No. 13).

28 Plaintiff moves for summary judgment on the grounds that the Administrative Law

– 1 –

Judge ("ALJ") committed a reversible error by incorrectly rejecting a treating physician's medical opinion and improperly weighing a nonexamining physician's opinion. (Pl.'s Mot. 13:8-22.) Plaintiff requests that the Court remand his case for the payment of benefits or, alternatively, further administrative proceedings. (*Id.* 13:23-14:4.) Conversely, the Commissioner argues that upholding the ALJ's decision is appropriate because the ALJ permissibly rejected the treating physician's opinion and properly relied on the nonexamining physician's testimony. (Def.'s Mot. 3:21-4:5.)

The Court finds these motions are suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons that follow, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** the Commissioner's Cross-Motion for Summary Judgment, and **REMANDS** this matter to the agency for further proceedings.

## I.    BACKGROUND

Plaintiff alleges he became unable to work due to his disabling conditions on June 1, 2013, when he was 47 years old. (Administrative Record ("AR") 164-67, ECF No. 7.) Prior to allegedly becoming unable to work, Plaintiff worked as a sheet metal mechanic where he manufactured, repaired, and painted airplane parts. (AR 195.) He started this position in 2005, and testified that he stopped working in April 2013 due to his health conditions. (AR 39.) Before that job, he worked as an aviation mechanic for the U.S. Navy for 20 years. (AR 49, 188.) He was honorably discharged from the military in 2004. (AR 49, 188.) Plaintiff has a 12th grade education. (AR 39.)

According to the administrative record and hearing testimony, Plaintiff suffers from: lower and upper back pain with two millimeter degenerative disc disease at L4-5; neck pain with mild multilateral degenerative disc disease at C3-4 through C3-5/6; left shoulder pain; left thigh pain due to meralgia paresthetica resulting from the superficial femoral nerve entrapment; right knee pain with patellar chondromalacia;

obstructive sleep apnea; obesity; allergic rhinitis; bilateral hearing loss; anxiety; hypertension; and hyperlipidemia.  (AR 22-23, 64, 153-55.)

Plaintiff had a benign parotid tumor surgically removed from his neck in 1991, and he underwent hyperhidrosis back surgery in 2001.  (AR 303.)  He reported experiencing allergy problems that started sometime after he joined the Navy.  (AR 275-76.)  Medical records indicate he was diagnosed with and treated for bilateral hearing loss as early as August 2004, allergic rhinitis and hyperlipidemia as early as August 2005, and hypertension as early as October 2013.  (AR 291, 474-75, 479.)  He reported experiencing right knee pain regularly starting in February 2009.  (AR 456-58.)  Plaintiff was diagnosed with and treated for left thigh pain due to meralgia paresthetica no later than May 2011, obstructive sleep apnea no later than July 2011, and anxiety and obesity no later than September 2013.  (AR 295-96, 405, 438, 447-48.)  An MRI conducted in June 2014 revealed two millimeter degenerative disc disease in Plaintiff's spine at L4-5.  (AR 561.)  Subsequently, an MRI conducted in March 2015 showed mild multilateral degenerative disc disease in his neck at C3-4 through C3-5/6.  (AR 786-94.)

Plaintiff received ongoing medical care for his conditions from the U.S. Department of Veterans Affairs ("VA").  As early as August 2005, the VA awarded Plaintiff a service-connected disability rating of 30%.  (AR 473.)  At some point between October 2013 and July 2014, Plaintiff's VA disability rating was increased to 70%.  (AR 288-89, 893.)

In addition, Plaintiff was examined and treated by physicians who were independent from the VA.  Plaintiff received physical therapy from Silver Strand Spine & Sport from September 2013 through April 2016, and was seen by Dr. Ziad Abu Khaled Tamimi there.  (AR 486, 673.)  Dr. Glen Balfour, a neurologist and spinal cord injury specialist, began treating Plaintiff as early as January 2015.  (AR 748.)  As of August 2016, Dr. Balfour was still treating Plaintiff.  (AR 156.)  Additionally, Dr. Richard B. Mantell examined Plaintiff in early 2016.  (AR 731-33.)

– 3 –

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act ("Act") on November 13, 2013. (AR 164-67.) The application was denied on initial administrative review and on reconsideration. Plaintiff requested his claim be heard before an ALJ. (AR 20.) Plaintiff appeared and testified at a hearing before ALJ Keith Dietterle on May 26, 2016. Dr. Lowell Sparks, Jr., a reviewing medical expert, and Victoria Rei, an impartial vocational expert, also testified. (AR 64-68.)

At the hearing, Plaintiff testified that his physical abilities are limited because of his injuries. (AR 40-63.) He stated that, among other limitations, he can sit, stand, and walk for only one hour at a time. (AR 44-45.) Dr. Sparks testified that Plaintiff is unable to perform work that requires: overhead work; lifting more than 20 pounds; frequent extreme neck motion; exposure to extreme hot or cold; climbing ladders, ropes, or scaffolds; working from unprotected heights; exposure to noisy environments; or working with dangerous machinery. (AR 45, 65.)

In a decision dated July 11, 2016, the ALJ determined that Plaintiff was not disabled under the meaning of the Act. (AR 30.) Plaintiff's request for review was denied by the Appeals Council on September 25, 2017, making the ALJ's decision the final decision of the Commissioner. (AR 1-4.) Plaintiff now seeks judicial review. (Compl., ECF No. 1.)

## II.    LEGAL STANDARD

Under 42 U.S.C. § 405(g), an applicant for social security disability benefits may seek judicial review of a final decision of the Commissioner in federal district court. "As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). The court "must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Moore v. Comm'r, Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). Federal courts will

uphold the Commissioner's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)).

"'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). In reviewing whether the Commissioner's decision is supported by substantial evidence, the court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* at 1035 (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks and citation omitted). However, the court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citation omitted).

## III.    ADMINISTRATIVE DECISION

### A.    Standard for Determining Disability

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act's implementing regulations, the Commissioner applies a five-step sequential evaluation process to determine whether an applicant for benefits qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

– 5 –

At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[1]  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two.

At step two, the ALJ must determine whether the claimant has a severe medical impairment, or combination of impairments, that meets the duration requirement in the regulations.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant's impairment or combination of impairments is not severe, or does not meet the duration requirement, the claimant is not disabled.  If the impairment is severe, the analysis proceeds to step three.

At step three, the ALJ must determine whether the severity of the claimant's impairment or combination of impairments meets or medically equals the severity of an impairment listed in the Act's implementing regulations.[2]  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is disabled. If not, the analysis proceeds to step four.

At step four, the ALJ must determine whether the claimant's residual functional capacity ("RFC")—that is, the most he can do despite his physical and mental limitations—is sufficient for the claimant to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).  The ALJ assesses the RFC based on all relevant evidence in the record.  *Id.* § 416.945(a)(1), (a)(3).  If the claimant can perform his past relevant work, he is not disabled. If not, the analysis proceeds to the fifth and final step.

At step five, the Commissioner bears the burden of proving that the claimant can perform other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience.  20

---

[1] "Substantial gainful activity" is work activity that (1) involves significant physical or mental duties and (2) is performed for pay or profit. 20 C.F.R. § 404.1510.

[2] The relevant impairments are listed at 20 C.F.R. part 404, subpart P, appendix 1.

C.F.R. § 404.1560(c)(1)-(2); *see also* 20 C.F.R. § 404.1520(g)(1). The ALJ usually meets this burden through the testimony of a vocational expert, who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (citations omitted). If the claimant is able to perform other available work, he is not disabled. If the claimant cannot make an adjustment to other work, he is disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

### B. The ALJ's Disability Determination

On July 11, 2016, the ALJ issued a written decision concluding that Plaintiff was not disabled within the meaning of the Act, and therefore not entitled to benefits. (AR 30.) The ALJ followed the five-step evaluation procedure to determine whether Plaintiff is disabled pursuant to the Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 1, 2013, the alleged onset date of his disability. (AR 22.)

At step two, the ALJ concluded that Plaintiff has severe impairments as defined by the Act. (AR 22.) The ALJ found that Plaintiff has obstructive sleep apnea, bilateral hearing loss, left thigh pain due to meralgia parestherica, degenerative disc disease of the lumbar and cervical spine, right knee patellar chondromalacia, and obesity. (*Id.*) He determined that those impairments are severe as they "more than minimally limit his basic work activities" and have lasted longer than 12 months. (*Id.*) However, in consideration of the record and Plaintiff's testimony, the ALJ deemed that Plaintiff's hypertension, hyperlipidemia, and allergic rhinitis are treated with medication. (*Id.*) As such, the ALJ concluded that these conditions "have such a minimal effect on [Plaintiff] that they would not be expected to interfere with [his] ability to work irrespective of age, education, or work experience." (AR 22-23.) The ALJ consequently found that these conditions are nonsevere. (*Id.*) Lastly, the ALJ concluded that Plaintiff's anxiety "does not cause more than minimal limitation [on

///

Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere." (AR 23.)

At step three, the ALJ concluded that Plaintiff's impairments, alone and in combination, did not meet or medically equal the severity of the impairments listed in the regulations. (AR 24.)

At step four, the ALJ found that Plaintiff has the RFC to perform "light work" as defined in the social security regulations with the following limitations:

> The claimant can sit six hours in an eight-hour day, and stand/walk six hours in an eight-hour day. She [sic] can occasionally lift 20 pounds and frequently lift 10 pounds. She [sic] can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, or scaffolds. She [sic] can never perform overhead work or work requiring frequently [sic] neck movement. She [sic] must avoid unprotected heights, dangerous or fast moving machinery, and extreme temperatures. The claimant must avoid concentrated exposure to noises, dust, fumes, and gasses.

(AR 24.) To make this finding, the ALJ summarized Plaintiff's medical records and noted diagnoses, tests, complaints, and treatments. (AR 25-27.)

Next, the ALJ evaluated the medical opinion evidence within the record. (AR 27-28.) First, he gave "great weight" to the testimony of nonexamining reviewing physician Dr. Sparks. The ALJ determined that Dr. Sparks' findings are consistent with his own assessment of Plaintiff's RFC and are also supported by the listed medical impairments and reports regarding Plaintiff's hearing loss, degeneration of the lumbar and cervical spine, and pain in his left thigh and right knee. (AR 27.) Second, the ALJ gave little weight to the opinions of state agency medical consultants Drs. John Vorhies, Jr., and G. Lockie. (*Id.*) He concluded that the consultants' opinions that Plaintiff had no exertional limitations but some postural and environmental limitations were inconsistent with the record, in particular the "objective evidence" of degeneration of Plaintiff's lumbar and cervical spine. (*Id.*)
/ / /

– 8 –

The ALJ furthermore addressed the opinions of Drs. Balfour and Mantell.  (AR 27.)  Here, the Court notes that the ALJ's written evaluation confusingly comingles these two opinions as follows:

> The undersigned has also considered the opinions of Glen Balfour, and Richard B. Mantell, M.D., who completed a functional assessment of the claimant and opined that he could perform work at less than the sedentary exertional level with additional postural and other limitations.  (Exhibits 15F; and 16F/10-12).  His findings are inconsistent with the medical record of evidence, which suggests great improvement of the claimant's condition with the help of physical therapy, and recent examinations that show full strength, stability and range of motion in the claimant's spine and knees.  (Exhibits 5F/6; and 19F/27, 32).  Additionally, the objective testing revealed mild changes that did not require additional surgery or cause changes to his gait.  (Exhibit 5F).  Accordingly, the undersigned gives his opinion little weight.

(AR 27.)

As seen above, the ALJ's decision addresses the separate, independent opinions of Drs. Balfour and Mantell simultaneously as one.  (AR 27.)  In addition to the ALJ's statements, the ALJ's citations to the record fail to provide clarity.  In the first sentence, the ALJ's cites to both physicians' opinions in the record.  (*Id.*)  However, the subsequent record citations all refer to documents authored by other medical providers.  (*Id.*)  Thus, the ALJ's statements and citations fail to distinguish which of his conclusions correlates to which physician's opinion.  (*Id.*)  The resulting ambiguity effectively forces the Court to speculate as to the ALJ's overall meaning.  Hence, this imprecise discussion impedes the Court from completing meaningful judicial review of the ALJ's analysis and falls short of Ninth Circuit standards.  "[A]lthough we will not fault the agency merely for explaining its decision with less than ideal clarity, we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citation and quotation omitted).

– 9 –

Nevertheless, the parties assume that the ALJ gave little weight to Dr. Balfour's opinion. (AR 27; Pl.'s Mot. 11:24-12:3; Def.'s Mot. 3:21-4:2.) The Commissioner also assumes that the ALJ gave little weight to Dr. Mantell's opinion. (Def.'s Mot. 6:26-7:2.) Plaintiff does not address the ALJ's mention of Dr. Mantell, but cites to Dr. Mantell's opinion to support his arguments. (Pl.'s Mot. 9:4-16, 12:10-18.) Although the ALJ's decision lacks clarity, the Court will adopt the assumption that the ALJ gave little weight to both Dr. Balfour's and Dr. Mantell's opinions to resolve the parties' opposing claims.

Next, the ALJ found Plaintiff's disability ratings from the VA to be of "little probative value." (AR 27-28.) He stated that when determining this rating, the VA does not adhere to the SSA's evaluation procedures for determining if a claimant is disabled. (AR 28.) Specifically, the ALJ noted that the VA does not determine an individual's RFC or if the individual is able to perform his past relevant work or other work that exists in significant numbers in the national economy. (*Id.*) As such, the ALJ gave Plaintiff's VA disability ratings "little weight." (*Id.*)

Lastly, the ALJ assessed Plaintiff's credibility, finding:

> [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . .

(AR 28.) The ALJ stated that Plaintiff claimed that he was unable to work because he could not perform heavy lifting or be exposed to chemicals. (*Id.*) The ALJ noted these claims were inconsistent with Plaintiff's assertions that he applied for jobs that he did not think he could perform with such limitations. (*Id.*) The ALJ also pointed to reports that Plaintiff's condition improved with physical therapy and that he maintained full strength and range of motion in his spine and knees. (*Id.*) The ALJ cited the VA's 2015 finding that Plaintiff's knee and lower leg conditions did not impact his ability to perform any occupational task. (AR 28, 1030.)

At the conclusion of step four, the ALJ determined that Plaintiff could not perform his past relevant work as a sheet metal mechanic or an assembler installer for aircraft. (AR 28-29.) He based this decision on Plaintiff's RFC and the testimony of the vocational expert, who considered the impact of Plaintiff's limitations. (*Id.*)

Lastly at step five, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy pursuant to 20 C.F.R. § 404.1569(a). (AR 29.) He stated that Plaintiff did not have the RFC to perform the full range of exertional demands of light work. (*Id.*) Considering Plaintiff's age, education, work experience, and RFC, the ALJ agreed with the vocational expert's determination that Plaintiff could perform the work requirements of an inspector, ticket taker, and marker. (AR 29-30.)

Based on his conclusions for each of the five steps of the evaluation procedure, the ALJ ultimately determined that Plaintiff is not disabled. (AR 30.)

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds. First, he argues that the ALJ committed legal error when he failed to sufficiently justify discounting the opinion of Plaintiff's treating neurologist, Dr. Balfour. (Pl.'s Mot. 11:24-12:5.) Second, Plaintiff argues that the ALJ improperly weighed the testimony of nonexamining medical expert Dr. Sparks. (*Id.*) The Commissioner contends the ALJ properly justified dismissing Dr. Balfour's opinion. (Def.'s Mot. 4:3-5.) In addition, the Court will determine whether the ALJ erred in disregarding the opinion of Plaintiff's examining physician, Dr. Mantell, as well as the VA's disability rating. Lastly, if there is error, Plaintiff asserts that the Court should reverse the ALJ's decision and order benefits to be paid. (Pl.'s Mot. 14:1-4.) The Court will examine each issue in turn.

/ / /

/ / /

/ / /

## A. Treating Specialist Dr. Balfour

### 1. Legal Standard for Treating Physicians

The Act's regulations distinguish among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (alteration omitted) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). As a general rule, the opinion of a treating doctor is entitled to greater weight than the opinion of doctors who do not treat the claimant. *Lester*, 81 F.3d at 830 (citation omitted). "The rationale for giving greater weight to a treating physician's opinion is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation omitted).

The degree of deference afforded to a treating source's opinion depends partly upon whether, and to what extent, that opinion is contradicted. A treating physician's opinion is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Such opinions may be rejected "only for 'clear and convincing' reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (quoting *Lester*, 81 F.3d at 830).

When a treating physician's opinion is contradicted, this "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Orn*, 495 F.3d at 632 (quoting Social Security Ruling 96–2p at 4 (Cum. Ed. 1996)). To determine the amount of deference owed, the opinion must be weighed using the six factors outlined in 20 C.F.R. § 404.1527(c)(2)-(6). These factors include the length of the treatment relationship and frequency of examination, the extent to which the opinion is supported by medical signs and laboratory findings,

17cv2305

the consistency of the opinion with the record as a whole, and whether or not the treating source is a specialist regarding the issue in question. *Id.* "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Orn*, 495 F.3d at 361).

In cases where a treating doctor's opinion is contradicted, an ALJ's rejection of that opinion may only be upheld if it contains "specific and legitimate reasons that are supported by substantial evidence" in the record. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 862 F.3d at 997 (quoting *Magallanes*, 881 F.2d at 751). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012-13.

## 2. Dr. Balfour's Opinion

Dr. Balfour, a neurologist and spinal cord injury specialist, began treating Plaintiff as early as January 2015. (AR 748.) According to Dr. Balfour's examination notes dated January through October 2015, Plaintiff regularly complained of back pain, left shoulder pain, peroneal neuropathy, neck pain, headaches, and right knee pain. (AR 748-73.) During these examinations, Dr. Balfour diagnosed Plaintiff with lumbosacral radiculopathy, osteoarthritis in his knees, a left rotator cuff injury, thoracic spine neuropathy, and left peroneal and femoral neuropathy. (AR 751, 754, 759, 762, 766, 769.)

While treating Plaintiff, Dr. Balfour performed and ordered multiple objective medical tests. These tests yielded both normal and abnormal results. On February 27, 2015, Dr. Balfour performed an EMG and Nerve Conduction Studies of Plaintiff's lower extremities. (AR 773-76.) The study yielded normal results. (*Id.*) In March 2015, several x-rays were performed. X-rays of Plaintiff's knees showed unremarkable results. (AR 777-82.) However, an x-ray of Plaintiff's cervical spine showed straightening of the cervical lordosis and restricted range of motion. (AR 786-89.) Also, an x-ray of Plaintiff's lumbar spine showed restricted range of motion, anterior inferior endplate osteophyte at L3, and anterior superior endplate osteophyte at L4. (AR 783-85.) Next, a June 26, 2015 magnetic resonance imaging study ("MRI") of Plaintiff's brain presented normal results. (AR 790.) On the same date, an MRI of Plaintiff's cervical spine showed multilevel mild degenerative changes greatest along the left side at C3-4, disc protrusions at C6-7, no spinal cord abnormalities, and mild foraminal narrowing at C3-4 and C5-6 due to uncovertebral osteophytes and facet arthropathy. (AR 791-92.) Lastly, an October 10, 2015 MRI of Plaintiff's lumbar spine showed a two millimeter broad-based posterior disk/endplate osteophyte complex at L4-L5 level, indenting the anterior aspect of the thecal sac. (AR 793.)

In two letters dated April 10, 2015, Dr. Balfour stated that Plaintiff's medical conditions "severely compromised his ability to perform his job as a Metal Sheet Worker Mechanic." (AR 718-21.) According to these letters, Plaintiff's "severe right knee pain" prevented him from kneeling for any extended period of time. (*Id.*) Plaintiff was "not able to perform short periods of standing, kneeling, crouching, stooping and working in strained and awkward positions." (AR 720.) He was also unable to maintain neck, shoulder, and low back postures for more than 30 minutes because of severe pain; these posture restrictions limited his ability to work overhead for more than one hour. (*Id.*) Plaintiff's neck pain caused "severe daily headaches," which compromised his ability to function at work. (AR 718.) "His left peroneal

neuropathy and left femoral neuropathy are aggravated by standing and maintaining body positions." (*Id.*) In addition, his left rotator cuff injury made it very difficult for him to lift more than 35 pounds, as well as grab, hold, and climb ladders. (AR 718-21.) Plaintiff's thoracic radiculopathy was aggravated by performing sanding, grinding, lifting, or "certain positional maneuvers." (AR 718.) Because of his sleep apnea and allergy rhinitis, he was unable to work with hazardous materials. (AR 720.) Furthermore, Plaintiff had a diminished ability to be alert and oriented due to depression and sleep disorders. (*Id.*) Dr. Balfour concluded that he expected all of Plaintiff's medical conditions "to last for several years in spite of medical therapy." (AR 718.)

### 3. ALJ's Rejection of Dr. Balfour's Opinion

As the Court explained above, the ALJ presumably gave Dr. Balfour's opinion little weight. (*See* AR 27.) He stated that Dr. Balfour's opinions were inconsistent with the medical record in two respects. (*Id.*) The Court agrees that at least some medical evidence in the record contradicts Dr. Balfour's opinion. As such, the Court will apply the "specific and legitimate" reasons standard to the ALJ's rejection of Dr. Balfour's opinion. *See Burrell*, 775 F.3d at 1140.

#### i. Reported Improvement, Strength, and Range of Motion

First, the ALJ asserted Dr. Balfour's opinion contradicted Plaintiff's reported improvement with physical therapy, as well as recent examinations showing full strength, stability, and range of motion in Plaintiff's spine and knees. (AR 27.) For this claim, the ALJ cited the initial medical evaluation completed by Plaintiff's physical therapy provider on September 25, 2013. (*Id.*) He additionally cited a VA Compensation and Pension Examination Report dated March 14, 2016. (*Id.*)

The physical therapy report notes that Plaintiff was seen for pain in his left shoulder, left thigh, and lower back. (AR 486-88.) It indicates that Plaintiff maintained full strength, normal gait, and full range of motion in his left shoulder and spine. (AR 487.) However, the same report further notes he had stiffness,

discomfort, tenderness, and muscle spasm in his shoulder. (*Id.*) Likewise, it states that Plaintiff had tenderness and stiffness in his lumbo-sacral spine, and tenderness and muscle spasm in his left thigh. (*Id.*)

The 2016 VA examination report consists of Disability Benefits Questionnaires that evaluate Plaintiff's neck, back, knees, and lower leg conditions. (AR 908-35.) The ALJ cited only two pages of the knee and lower leg questionnaire. The referenced pages indicate that Plaintiff maintained normal range of motion in his left knee and had no instability in his right knee. (AR 920, 924.) Yet the rest of the 28-page report also includes the following findings: abnormal range of motion in his spine and neck; arthritis in his right knee and neck; mild difficulty with turning his neck; and difficulty walking, standing, bending, lifting, and carrying due to his spine and knee conditions. (AR 911, 917, 928, 930-31, 935.) The report states that these conditions contribute to functional loss as well as impact Plaintiff's ability to work and perform occupational tasks. (AR 911, 917, 928, 930-31.)

### ii. Surgery Recommendations and Normal Gait

Second, the ALJ deemed that Dr. Balfour's opinion was inconsistent with the absence of recommendations for Plaintiff to undergo additional surgery and reports that Plaintiff's conditions did not impact his gait. (AR 27.) The ALJ's decision cites Plaintiff's physical therapy reports dated September 25, 2013 through May 28, 2014 for this claim. (AR 27, 482-503.) In accordance with the ALJ's assertions, these reports note that during this 2013 to 2014 time period, Plaintiff's gait remained within normal limits. (*Id.*) These reports also do not mention that Plaintiff was recommended surgery. (*Id.*) Further, these records report that Plaintiff indicated that his symptoms significantly improved over the course of physical therapy treatment. (*Id.*) However, these reports note that while Plaintiff's symptoms reportedly improved, at the same time he described ongoing pain in his right knee, back and left shoulder, as well as some pain in his neck and left thigh. (AR 489, 492, 495, 498, 501.)

17cv2305

#### 4. Analysis of ALJ's Rejection of Dr. Balfour's Opinion

The Court finds that the ALJ failed to meet his burden of providing specific and legitimate reasons supported by substantial evidence to discount Dr. Balfour's opinion. Conceivably, the ALJ may have been justified in not giving "controlling weight" to Dr. Balfour's opinion. Overall, however, the ALJ's reasons for giving the opinion of a treating medical specialist "little weight" instead of the "greatest weight" were legally insufficient for two reasons. (AR 27.)

First, the ALJ based his determination that Dr. Balfour's opinion was inconsistent on conclusory references to narrow selections from the record. The ALJ may not cherry-pick the record to support his disability determination. *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Moreover, the ALJ may not rely upon insufficient evidence of alleged inconsistencies as the basis for rejecting an examining physician's opinion. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusions.").

Here, the ALJ selected brief segments from the medical records he cited, ignoring the record as a whole. In doing so, he failed to recognize the various consistencies between Dr. Balfour's opinion and other medical records. The ALJ ignored that Dr. Balfour's opinion as well as Plaintiff's physical therapy and VA records all reported that Plaintiff had difficulty with moving his neck, walking, bending, standing, lifting, and carrying. He overlooked that both sources independently documented Plaintiff's ongoing complaints of persistent back, neck, left shoulder, left thigh, and right knee pain. *See Nguyen*, 100 F.3d at 1465. Moreover, the ALJ did not address Plaintiff's more recent physical therapy notes

– 17 –

when evaluating Dr. Balfour's opinion. Physical therapy records from early 2016 indicate that Plaintiff experienced ongoing pain and had a 50% to 70% decrease in the range of motion of his left shoulder. (AR 673-83.) Further, by relying on only these excerpts, the ALJ failed to provide a "detailed and thorough summary of the facts and conflicting clinical evidence" or "a substantive basis for his conclusions." *See Trevizo*, 862 F.3d at 997 (quoting *Magallanes*, 881 F.2d at 751); *see also Garrison*, 759 F.3d at 1012-13.

Furthermore, the ALJ's brief reference to the fact that additional surgery was not recommended for Plaintiff similarly fails to give meaningful consideration to all relevant medical evidence. As such, this reasoning is likewise insufficient to reject Dr. Balfour's opinion. *See Kager v. Astrue*, 256 F. App'x 919, 923 (9th Cir. 2007) (finding that an ALJ's reasoning for rejecting physicians' opinions about a diagnosis "simply by observing that no measures, such as surgery, were undertaken" was insufficient because "[t]his reasoning lacks the specificity required 'to allow a reviewing court to confirm that the [evidence] was rejected on permissible grounds and not arbitrarily.'" (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1041 (9th Cir. 2003))). As a result of relying on bare references to excerpts from the record, the ALJ erred because his dismissal of Dr. Balfour's opinion did not contain specific and legitimate reasons supported by substantial evidence.

To substantiate the ALJ's finding that Dr. Balfour's opinion was contradicted by other medical evidence, the Commissioner points to a substantial number of physical therapy records dating from May 2014 through April 2016. (Def.'s Mot. 4:4-6:26; AR 673-717.) The Commissioner lists multiple instances in these records that indicate that Plaintiff's impairments significantly improved with physical therapy and that Plaintiff exhibited full range of motion, full strength, and normal gait. (*Id.*) But like the ALJ's decision, the Commissioner's support only consists of more cherry-picked selections from the record to endorse a finding that Plaintiff is not disabled. The Commissioner likewise ignores the reports of Plaintiff's ongoing

complaints of pain and limited range of motion in his shoulder contained in the records she cited. As such, the Commissioner's similarly incomplete portrayal of the record does not compensate for the shortcomings of the ALJ's decision.

Second, even if the ALJ had sufficiently established that Dr. Balfour's opinion was substantially contradicted by the record, he also failed to determine the amount of deference owed to the opinion of a treating physician in accordance with the factors established in 20 C.F.R. § 404.1527(c)(2)-(6). *See Ghanim*, 763 F.3d at 1161 ("Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it. The ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion."). The ALJ's decision did not mention any of the following: the length of Dr. Balfour's treatment of Plaintiff; how frequently he examined Plaintiff; the consistency of Dr. Balfour's opinion with the record as a whole; the extent to which his opinion is supported by medical signs and laboratory findings; or Dr. Balfour's medical specialty and how it related to Plaintiff's conditions. Therefore, the ALJ committed legal error by failing to satisfy regulation requirements when weighing the medical opinion of treating specialist Dr. Balfour.

### B. Examining Physician Dr. Mantell

#### 1. Legal Standard for Examining Physicians

While an examining physician is not entitled to the same degree of deference as a treating physician, the ALJ may not simply reject an examining physician's opinion. Rather, the opinions of examining physicians, even if contradicted by another doctor, "can only be rejected for specific and legitimate reasons that are supported by substantial evidence." *Lester*, 81 F.3d at 830-31; *see also Nguyen*, 100 F.3d at 1465. An ALJ errs by failing to provide valid reasoning for discrediting the opinion of an examining physician, particularly when a nonexamining physician's opinion is afforded greater weight. *See Cain v. Barnhart*, 74 F. App'x 755, 756 (9th Cir. 2003); *Feskens v. Astue*, 804 F. Supp. 2d 1105, 1115 (D. Or. 2011).

– 19 –

### 2.    Dr. Mantell's Opinion

Dr. Mantell examined Plaintiff during a two-day, 3.5-hour functional capacity evaluation.  (AR 731-33.)  He opined in an April 16, 2016 report that Plaintiff could perform work at the sedentary level with limitations.  (*Id.*)  He restricted Plaintiff to standing for no more than 10 minutes and lifting no more than 15 pounds.  (AR 733.) According to Dr. Mantell's evaluation, Plaintiff did not meet the minimal physical demands required to safely work as a sheet metal worker.  (*Id.*)  Dr. Mantell also reported that Plaintiff "demonstrated poor quality of movement overall due to pain limitations" and showed "[d]ecreased strength and endurance of both upper extremities." (AR 732.)  He noted that Plaintiff's lower back and knee pain "severely limits" squatting and climbing.  (*Id.*)

Plaintiff asserts that Dr. Mantell's opinion supports Plaintiff's functional and work limitations. (Pl.'s Mot. 12:10-18.) The Commissioner argues that Dr. Mantell's opinion contradicts Plaintiff's treatment record.  (Def.'s Mot. 7:2-6)  As such, the Commissioner claims that Dr. Mantell's findings regarding Plaintiff's physical limitations fail to "rehabilitate" Dr. Balfour's similar conclusions.  (*Id.* 7:6-7.)

### 3.    ALJ's Rejection of Dr. Mantell's Opinion

Because the ALJ indistinguishably evaluated the opinions of Drs. Balfour and Mantell together, the ALJ seemed to also give Dr. Mantell's opinion little weight based on alleged inconsistencies with the medical record.  (*See* AR 27.)  As with Dr. Balfour's opinion, the Court agrees that at least some medical evidence contradicts Dr. Mantell's opinion, and thus the Court will apply the "specific and legitimate" reasons standard to the ALJ's dismissal of Dr. Mantell's opinion.  *See Lester*, 81 F.3d at 830-31; *Cain*, 74 F. App'x at 756; *Feskens*, 804 F. Supp. 2d at 1115.

As with Dr. Balfour, the ALJ first asserted Dr. Mantell's opinion contradicted Plaintiff's reported improvement with physical therapy, as well as recent examinations showing full strength, stability, and range of motion in Plaintiff's spine

– 20 –

and knees.  (AR 27.)   He also cited the September 2013 physical therapy evaluation and the March 2016 VA Compensation and Pension Examination Report.  (*Id.*)

Second, the ALJ stated Dr. Mantell's opinion was inconsistent with the lack of any recommendations for Plaintiff to undergo more surgery and reports that Plaintiff's conditions did not impact his gait.  (AR 27.)  The ALJ's decision cites Plaintiff's physical therapy reports dated September 25, 2013 through May 28, 2014. (AR 27, 482-503.)

### 4.    Analysis of ALJ's Rejection of Dr. Mantell's Opinion

As with the ALJ's rejection of Dr. Balfour's opinion, the Court finds that the ALJ failed to provide specific and legitimate reasons supported by the record to discredit Dr. Mantell's opinion.  For the same reasons the Court explained above for Dr. Balfour's opinion, the ALJ's conclusion that Dr. Mantell's determinations were inconsistent with other medical documentation is based on narrow cherry pickings from the record.  By ignoring the record as a whole, the ALJ failed to acknowledge the consistencies between Dr. Mantell's opinion and separate medical sources.  He omitted that both Dr. Mantell and other providers noted Plaintiff's reports of pain in his back, upper extremity, and knee.  *See Nguyen*, 100 F.3d at 1465.  Furthermore, the ALJ compared Dr. Mantell's 2016 evaluation only with physical therapy records from 2013.  The ALJ did not cite to Plaintiff's physical therapy notes from the same year as Dr. Mantell's evaluation.  Yet, physical therapy records from early 2016 state that Plaintiff complained of continuing pain and had a 50% to 70% decrease in the range of motion of his left shoulder.  (AR 673-83.)  In addition, the ALJ's short reference to the fact that additional surgery was not recommended for Plaintiff lacks specificity.  *See Kager*, 256 F. App'x at 923.  By only citing to narrow selections from the record, the ALJ failed to weigh all of the medical evidence and failed to provide a thorough summary of the record.  *See Trevizo*, 862 F.3d at 997 (quoting *Magallanes*, 881 F.2d at 751).  Overall, the ALJ erred in rejecting Dr. Mantell's

/ / /

opinion by not substantiating his decision with specific and legitimate reasons supported by the record.

### C.      Reviewing Physician Dr. Sparks

#### 1.      Legal Standard for Nonexamining, Reviewing Physicians

Plaintiff also argues that the ALJ committed legal error by improperly affording greater weight to the opinion of Dr. Sparks, a nonexamining testifying medical expert, over that of Dr. Balfour, Plaintiff's treating specialist, and Dr. Mantell, Plaintiff's examining physician. (Pl.'s Mot. 11:24-12:5.) "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison*, 759 F.3d at 1012 (quoting *Lester*, 81 F.3d at 830). "When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate her reasons for doing so." *See Feskens*, 804 F. Supp. 2d at 1115 (citing *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999)). More specifically, an ALJ errs when he or she "accord[s] greater weight to the opinion of a non-examining, non-treating physician than to the opinions of [a claimant's] treating and examining physicians without providing 'specific' and 'legitimate' reasons supported by 'substantial evidence in the record' for doing so." *Cain*, 74 F. App'x at 756 (citing *Lester*, 81 F.3d at 830-31).

#### 2.      Dr. Sparks' Opinion

Dr. Sparks is a non-treating, nonexamining internist and endocrinologist who reviewed Plaintiff's medical records for this case. (AR 63, 669.) He testified during the administrative hearing that Plaintiff had the following medically determinable impairments: hypertension that is controlled by medication; hyperlipidemia; obstructive sleep apnea; allergic rhinitis; sensory neuro high-pitch bilateral hearing loss; left thigh pain due to meralgia paresthetica resulting from the superficial femoral nerve entrapment; low back pain with two millimeter degenerative disc disease at L4-5; right knee pain with patellar chrondromalacia; neck pain with mild multilateral

degenerative disc disease at C3-4 through C3-5/6; and obesity. (AR 64.) Dr. Sparks then opined that Plaintiff should have the following work restrictions: can occasionally lift 20 pounds and frequently lift 10 pounds; no use of ladders, ropes, or scaffolding; no overhead work; no frequent extreme motion of the neck; no exposure to extreme hot or cold; no exposure to noisy environments; no work from unprotected heights; no work with dangerous machinery; and can stand, walk, and sit six hours out of an eight-hour day. (AR 65.)

### 3.   ALJ's Acceptance of Dr. Sparks' Opinion

The ALJ assigned "great weight" to Dr. Sparks' opinion. (AR 27.) He justified this consideration by stating that Dr. Sparks' findings were "consistent" with his own assessment of Plaintiff's RFC and are "supported by the listed medical impairments and reports that the claimant has decreased hearing sensitivity, degeneration of the lumbar and cervical spine, and pain in his left thigh and right knee." (*Id.*)

### 4.   Analysis of ALJ's Acceptance of Dr. Sparks' Opinion

The Court finds the ALJ's decision lacks legal justification for giving Dr. Sparks' opinion great weight, particularly over the little weight given to Plaintiff's treating and examining physicians. An ALJ's statement that a physician's opinion matches the ALJ's own conclusions is not a legitimate explanation for why that physician's opinion should be granted more weight. *See Ressler v. Berryhill*, 687 F. App'x 560, 562 (9th Cir. 2017) ("The ALJ explained that he gave weight to the medical opinions and medical evidence in the record 'to the extent that they are consistent with this decision.' Such a standard is nowhere reflected in our case law and the ALJ's application of it constitutes an error of law."). Though the ALJ states that Dr. Sparks' opinion is supported by the listed medical impairments and some of Plaintiff's medical conditions, he does not explain how or why said support is significant. Therefore, this conclusion is also devoid of sufficient legal reasoning.

Moreover, the ALJ's assessment failed to justify why he favored Dr. Sparks' opinion over the opinions of Dr. Balfour, a treating physician, and Dr. Mantell, an

17cv2305

examining physician. Dr. Sparks is a nonspecialist testifying physician who reviewed Plaintiff's record. (AR 63-64.) He has never spoken to Plaintiff, examined him, or treated him. (*Id.*) Contrary to Dr. Sparks' opinion, Dr. Balfour determined after repeatedly examining and treating Plaintiff that he is "not able to perform short periods of standing." (AR 720.) In addition, Dr. Mantell deemed that Plaintiff could perform work at the sedentary level only with limitations. (AR 731-33.) After completing a two-day functional capacity evaluation of Plaintiff, Dr. Mantell restricted Plaintiff to standing for no more than 10 minutes and lifting no more than 15 pounds. (*Id.*) These findings directly contradict Dr. Sparks' conclusions. (AR 65, 733.) By favoring Dr. Sparks, a reviewing physician, the ALJ went against the law's directive to generally give "more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1); s*ee also Garrison*, 759 F.3d at 1012. Therefore, he failed to provide legally sufficient reasons for giving the opinions of Drs. Balfour and Mantell little weight and for giving Dr. Sparks greater and ultimately determinative weight. Consequently, the ALJ committed legal error when weighing Dr. Sparks' opinion.

### D. VA Disability Determination

#### 1. Legal Standard for VA Disability Determination

Furthermore, the ALJ committed legal error by neglecting to adequately explain his dismissal of Plaintiff's VA disability rating. Though Plaintiff fails to identify this issue, it is properly before the Court due to the Court's independent burden to determine whether the Commissioner's decision is free of legal error. *See, e.g.*, *Bruce*, 557 F.3d at 1115. Given the great weight accorded to a VA determination of disability by the Ninth Circuit and the ALJ's conclusory rejection of Plaintiff's VA rating, the Court will examine this issue.

/ / /

/ / /

"[T]he ALJ must consider the VA's finding in reaching his decision and the ALJ must ordinarily give great weight to a VA determination of disability." *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011) (internal quotation marks omitted) (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)). Given this requirement, the ALJ has a duty to inquire about the VA disability rating and include evidence of the rating in the record to allow for proper evaluation. *See id.* The Ninth Circuit has found "great weight to be ordinarily warranted" for the VA rating because of the "marked similarity" between the federal disability programs of the VA and the Social Security Administration ("SSA"). *See Luther v. Berryhill*, 891 F.3d 872, 876 (9th Cir. 2018). However, a VA disability rating is not conclusive in a social security disability matter. *See* 20 C.F.R. § 404.1504. "An ALJ may give less weight to a VA rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Luther*, 891 F.3d at 876-77 (internal quotation marks omitted) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009)).

### 2. VA Disability Rating

According to his medical records from the VA, Plaintiff was awarded a 30% disability rating by the VA as early as August 2005. (AR 473.) At some time between October 2013 and July 2014, the VA increased Plaintiff's disability rating to 70%. (AR 288-89, 893.) However, the record does not include Plaintiff's official VA rating decision records issued by a VA regional office. Such records articulate the VA's decision, reasons for decision, and evidence that supports its decision. *See Compensation*, *Claims Process*, U.S. Department of Veterans Affairs, https://www.benefits.va.gov/compensation/process.asp (last visited June 22, 2018).

### 3. ALJ's Rejection of VA Disability Determination

Here, the ALJ asserted that the disability determination processes utilized by the SSA and VA are "fundamentally different." (AR 28.) He pointed out that the VA does not determine a claimant's RFC. He also noted that the VA does not

establish whether the claimant is capable of performing his past relevant work or work that exists in significant numbers in the national economy. (*Id.*) Based on these differences, the ALJ found the VA's rating "is of little probative value" and assigned the VA's assessments "little weight." (*Id.*)

### 4. Analysis of ALJ's Rejection of VA Disability Rating

The Court finds the ALJ improperly rejected the VA's disability determination for Plaintiff. The ALJ's rationales conflict with the Ninth Circuit's controlling determination that there is "marked similarity" between the VA's and SSA's disability programs. *See Luther*, 891 F.3d at 876; *McCartey*, 298 F.3d at 1076. Though the VA does not determine a claimant's RFC or the jobs he is capable of performing, it does determine a claimant's functional loss as well as the impact of his conditions on his ability to work and perform occupational tasks. (AR 917, 928, 936.) The ALJ did not articulate any further reasons based on the record for giving the VA's disability assessment little weight. Thus, he erred by failing to provide persuasive, specific, valid reasons for dismissing the VA's disability determination. *See Luther*, 891 F.3d at 876-77.

## V. Harmless Error Analysis

Having concluded that the ALJ erred in giving little weight to the opinions of Drs. Balfour and Mantell, in giving favoring weight to Dr. Sparks, and improperly disregarding the VA's determination of disability, the Court must now determine whether these errors were harmless. "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle*, 533 F.3d at 1162). In assessing whether an error is harmless, the court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id.*

Here, the ALJ's errors were not harmless. The ALJ's RFC determination that Plaintiff could perform light work with some limitations was effectively identical to that of Dr. Sparks. (AR 24, 65.) This finding directly contradicts Dr. Mantell's

determination that Plaintiff was only capable of sedentary work with limitations of standing for no more than 10 minutes and lifting no more than 15 pounds. (AR 731-33.) The ALJ further ignored the VA's most recent determination that Plaintiff's thoracolumbar spine, knee, and cervical spine conditions impacted his ability to work. (AR 917, 928, 936.) Consequently, the ALJ's RFC determination overstated Plaintiff's capacity to work. *See Valentine*, 574 F.3d at 690 ("[A]n RFC that fails to take into account a claimant's limitations is defective."). This incorrect RFC assessment, in turn, distorted the ALJ's determination of whether Plaintiff could adjust to other work in the national economy. Consequently, the ALJ's final decision on whether Plaintiff is disabled and entitled to benefits was tainted. Accordingly, the Court finds the ALJ committed harmful legal error.

## VI. Appropriate Remedy

Having determined that harmful legal error was committed, the Court must decide the appropriate remedy. Plaintiff requests that the Court reverse and award benefits. (Pl. Mot. 14:1-4.) The Court finds that remanding to the agency for further proceedings is the correct course.

"[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). This "ordinary remand rule" respects the Commissioner's role in developing the factual record, and helps guard against the displacement of administrative judgment by judicial decree. *See Treichler*, 775 F.3d at 1099-00. When an ALJ makes a legal error, but there are ambiguities or outstanding issues in the record, the proper approach is to remand for further proceedings, not to apply the "credit as true" rule. *See id.* at 1105.

For this Court to depart from the ordinary remand rule and award benefits under the "credit as true" rule, three requirements must be met. *Garrison*, 759 F.3d at 1019-21. First, the court must determine that the ALJ committed legal error, such as by failing to provide legally sufficient reasons for rejecting certain evidence.

*Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).  Second, if the court finds such error, it must determine whether "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *Garrison*, 759 F.3d at 1020.  In making this determination, the court reviews the record as a whole and asks whether there are conflicts, ambiguities, or gaps in the record such that essential factual issues have not been resolved.  *Dominguez*, 808 F.3d at 407 (citation omitted).  Where there are outstanding issues that require resolution, the proper approach is to remand the case to the agency for further proceedings.  *See Treichler*, 775 F.3d at 1101, 1105.

If the court determines that the record has been fully developed and there are no outstanding issues left to be resolved, the court lastly must consider whether "the ALJ would be required to find the claimant disabled on remand" if the "improperly discredited evidence were credited as true."  *Dominguez*, 808 F.3d at 407 (quoting *Garrison*, 759 F.3d at 1020).  "If so, the district court may exercise its discretion to remand the case for an award of benefits."  *Id.*  However, even when the requirements of the credit as true rule are satisfied, district courts retain flexibility to remand for further proceedings when the record as a whole creates "serious doubt" as to whether the claimant is disabled.  *Id.* at 1021.  "The touchstone for an award of benefits is the existence of a disability, not the agency's legal error."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).

In this matter, the first "credit as true" requirement is met as the ALJ committed legal error by failing to provide legally sufficient bases for granting little weight to the opinions of Plaintiff's treating specialist Dr. Balfour and examining physician Dr. Mantell, weighing the opinion of nonexamining expert Dr. Sparks, and discounting the VA's disability assessment.

However, neither the second nor the third requirement of the "credit as true" rule is met.  Here, the Court is not satisfied that the record has been fully developed or that further administrative proceedings would serve no useful purpose.  First, the

admitted evidence lacks a complete record of the VA's disability rating determination. While the VA medical documents in the record provide some information regarding Plaintiff's disability rating, they do not articulate the reasons for the VA's decision or the evidence supporting said decision. In particular, the record lacks evidence as to why the VA increased Plaintiff's disability rating from 30% to 70%. (*See* AR 288-89, 473, 893.) Without the official VA rating decision records, the ALJ was incapable of adequately considering and evaluating the VA's disability analysis. *See McLeod*, 640 F.3d at 886 (holding that inadequacy of the record can inhibit proper evaluation of a plaintiff's VA disability rating). As such, the record has not been fully developed.

Moreover, as to the third "credit as true" requirement, it is unclear from the record if the ALJ would be required to find Plaintiff disabled on remand if the improperly discredited opinions of Drs. Balfour and Mantell were credited as true. Dr. Balfour only directly addressed Plaintiff's functional capacity in two letters dated April 2015. (AR 718-21.) He stated in one of the letters that Plaintiff "is not able to perform short periods of standing, kneeling, crouching, stooping and working in strained and awkward positions." (AR 720.) However, his statement did not specify what length of time constituted a "short period." Moreover, this letter addressed whether Plaintiff was capable of performing his most recent position as a sheet metal worker, and neither of the two letters specifically addressed Plaintiff's ability to work any job at all. (AR 718-21.) Furthermore, Dr. Mantell concluded that Plaintiff was capable of sedentary work with limitations of standing for no more than 10 minutes and lifting no more than 15 pounds. (AR 731-733.) Yet, the ALJ did not ask the vocational expert about the job availability for someone with the exact work limitations determined by Dr. Balfour or Dr. Mantell. The ALJ did ask the vocational expert about a hypothetical person of the same age, education level, and work experience as Plaintiff with the functional limitations that the ALJ found Plaintiff had, except that person could only lift and carry a maximum of 10 pounds. (AR 67.)

The vocational expert testified that she could not cite any jobs that could be performed by such a person. (AR 68.) But these limitations are not identical to those provided by Plaintiff's discredited physicians. Consequently, there is not enough information in the record to determine if the ALJ would be required to find Plaintiff disabled on remand if the opinions of Drs. Mantell and Balfour were credited as true and considered with the vocational expert's testimony.

Considering the ALJ's errors in his evaluation of Dr. Balfour's and Dr. Mantell's opinions, the incomplete VA record, and the uncertainty about whether the ALJ would be required to find Plaintiff disabled on remand, the record is not "free from conflicts, ambiguities, or gaps." *See Treichler*, 775 F.3d at 1103. Therefore, the requirements for the credit-as-true rule are not satisfied, and the Court will not depart from the ordinary remand rule. *See id.* at 1105. Accordingly, the Court will remand for further proceedings.

**VII. CONCLUSION**

In light of the foregoing reasons, the ALJ erred in discounting the opinions of Drs. Balfour and Mantell, crediting the opinion of Dr. Sparks, and dismissing the VA's disability assessment. The Court finds that the ALJ failed to provide "specific and legitimate reasons that are supported by substantial evidence" in his decision to discredit the opinions of Dr. Balfour, Plaintiff's treating specialist, and Dr. Mantell, Plaintiff's examining physician, in favor of affording more weight to the opinion of Dr. Sparks, a nonexamining physician. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)); *Cain v. Barnhart*, 74 Fed. App'x 755, 756 (9th Cir. 2003) (quoting *Lester*, 81 F.3d at 830-31).

The Court also finds that remanding for further proceedings is the appropriate remedy. Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 12) and **DENIES** the Commissioner's Cross-Motion for

/ / /

– 30 –

Summary Judgment (ECF No. 13).  Finally, the Court **REMANDS** this action for further proceedings consistent with this order.  *See* 42 U.S.C. § 405(g).

      **IT IS SO ORDERED.**

**DATED:  July 26, 2018**

**Hon. Cynthia Bashant**
**United States District Judge**

17cv2305